RACHEL BALTZELL, *Appellant*, v. D. L. McKINNON, *Appellee.*

1.  A complainant in equity who seeks to cancel a deed of the defendant to a tract of land as a cloud upon the title and who fails to show either a documentary title to the land, or adverse

possession of it for a period sufficiently long to give title by such adverse possession, is not entitled to relief.

2. Where a tract of land is the subject of dispute between the parties to a bill filed to cancel a deed of the defendant to said land as a cloud on complainant's title, and the complainant shows no valid documentary title, nor title by adverse pos session, and where the defendant files a cross bill praying a cancellation of a deed to said land held by complainant, which is insufficient in itself to show title in complainant but which has for a number of years been made the basis for annoyance and litigation, a decree granting the prayer of the cross bill will not be reversed on appeal.

This case was decided by the Court En Banc.

Appeal from the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the court.

· Benj. S. Liddon, for Appellant;

D. L. McKinnon, in pro per.

HOCKER, J.—On July 11, 1907, appellant filed a bill in the Circuit Court of Jackson County against the appellee to cancel a certain deed executed to him by M. L. Dekle, trustee, as a cloud on the title of appellee to a certain one acre lot near the town of Marianna in Jackson county, and praying that he, his agents and servants be enjoined from trespassing thereon. Appellee filed a cross bill setting up his title and praying the cancellation of a certain deed to said one acre tract executed on the 5th of September, 1904, by Susan Bellamy and her husband, and for an injunction against trespassing by the appellant, her agents, servants, etc. The substantial facts set up in the cross bill were also stated in the answer to the bill, replications were filed and a large volume of testimony was taken. The testimony occupies nearly two

hundred pages of the record, consisting mostly of the opinions of a large number of witnesses as to the location of the particular acre in dispute, and of divers acts of notorious adverse possession of the same by the respective litigants and those under whom they are supposed to claim for a number of years. This acre never enclosed, and with no building upon it of any sort, has apparently furnished during the past twenty years an almost incredible amount of firewood, poles, fence posts, lightwood, etc., to its several alleged owners, considering that it still seems to be a very well wooded piece of land. This litigation is sustained either by the great value of this single acre, or the *gaudium certaminis* which has always been a characteristic of a conquering race. One can feel his heart's beats quicken and his spirit rise as he reads the details of this strenuous struggle. One party attempted to build a fence, the other knocked it down. An arrest was made and the arrested party tried and acquitted, and the whole community seems to have been kept in a state of excitement for a number of years. It was well perhaps for the peace of society that the court of chancery was invoked to settle this controversy. Both parties claim to deraign title through Amanda S. Barkley (nee Bryan).

On the 3rd of July, 1858, William C. Bryan and wife conveyed to Amanda S. Bryan, her heirs, etc., the west half of the northwest quarter of Section Four, Range Ten North and West. The appellant alleges in her bill that Amanda S. Barkley executed a deed of the one acre on the 22nd of August, 1871, to Martha Jane Burkett describing it therein as follows: "the following described land lying one mile west of the town of Marianna being at the northeast corner of the land so owned by her, and commencing at the road front of the house of Joseph W. Russ on the road leading from the town of Marianna to Camp-

bellton, running thence seventy yards south, thence seventy yards west, thence seventy yards north, from thence seventy yards east to the point of beginning;" that Martha Jane Burkett, a year or two after she became seized of said lot conveyed the same to Susan Bellamy, wife of Guff Bellamy, but the deed was never recorded and has been lost; that Amanda Barkley lived until May 24th, 1879, eight years after the execution of the deed to Martha Jane Burkett, and never claimed this acre of land, but recognized it as the property of Martha Jane Burkett, and afterwards as the property of Susan Bellamy, and in her will recognized it as the Guff Bellamy lot, which was a clerical error; that on the 5th of September, 1904, complainant purchased all the right, title and interest of Susan Bellamy and Guff Bellamy to this acre, and received from them a quit claim deed to it, the original of which is attached to the bill as Exhibit"C" and made a part of the bill; that complainant obtained a tax deed on the 3rd of January, 1876, which attempted to described the acre in question. The tax deed is made a part of the bill as Exhibit "D." The bill admits that by clerical error the acre in question is not correctly described in this deed. The bill alleges that on the 20th of October, 1883, complainant sold and conveyed to one Emanuel by deed made a part of the bill as Exhibit "E," the said acre of land, but admits that it is not correctly described therein; that on the 8th of October, 1901, Emanuel White sold and conveyed the said lot of land to W. H. Milton, but admits that it is not correctly described therein; that W. H. Milton on the first day of January, 1902, sold and conveyed the land to the complainant, and that this deed also incorrectly describes the land. The bill alleges that all the foregoing parties went into open notorious and exclusive adverse possession of said lot of land and exercised such act of ownership over it as it was susceptible

of, it being a vacant lot with no buildings or improvements on it containing trees suitable for firewood. The two last mentioned deeds are made parts of the bill as Exhibit "F," and "G." The bill further alleges that since 1876, when she entered into possession of the land she has had her residence on land adjoining the one acre in controversy, separated only by a public road called the Marianna and Campbellton road, her residence being within two hundred feet of said lot; that she is the widow of the late G. A. Baltzell, who lived with her and had charge of said lot; that said one acre lot is within the present corporate limits of the town of Marianna; that the holdings of land in the neighborhood are in small quantities by various persons; that her husband died on the 29th of March, 1903; that neither complainant nor any of her neighbors ever heard that D. L. McKinnon claimed this land until a few days before the death of her husband; that in 1905, complainant began to enclose this lot of land with a fence, and that D. L. McKinnon most wantonly and recklessly with force and violence tore down and destroyed the fence. The bill then alleges other trespasses by D. L. McKinnon, and that he prosecuted N. A. Baltzll, her son, unsuccessfully for trespasses on said land. The bill at great length alleges that D. L. McKinnon has never been in possession of this acre of land; that he pretends and claims a title to it; that he has trespassed on it, cut cedar posts therefrom, and threatens to further trespass; that complainant has recently discovered that D. L. McKinnon predicates his title on a deed executed to him by M. L. Dekle, trustee; that Dekle was never appointed trustee, and never as trustee or as an individual had any interest in said lot of land and never intended to convey the same to McKinnon, and neither the executor of Amanda S. Barklev nor any person claiming by or through or under them or either of them ever asserted any claim to said proprty, under the will of said

Amanda S. Barkley, who did not die seized and possessed of the same. The bill alleges that while the deed to Dekle trustee to McKinnon conveys no title to the latter yet he claims that it does, and it probably embraces the land in dispute in its description, and alleges that it depreciates the market value of the lot and is a cloud on complainant's title. The bill prays for a removal of this cloud, and for an injunction as before stated. The answer and cross bill of D. L. McKinnon admits that Amanda S. Barkley was at and before her death seized of land in Jackson county, but does not admit she ever owned the land described in the bill as conveyed by Amanda S. Barkley to Martha Jane Burkett. They deny that any of the other conveyances described in the bill embrace the land in question, except perhaps the alleged bogus quit claim deed from Guff Bellamy and his wife dated 5th of September, 1904. They deny that complainant or any one else except the defendant McKinnon ever had open, notorious and continuous possession of said acre or exercised acts of ownership over it, since he purchased it in 1886; that it is a part of a strip of land adjoining his home place and is not more than one hundred yards from his residence. The cross bill alleges that on the 4th day of October, 1886, one M. L. Dekle as trustee for the Methodist Episcopal Church of Marianna, Florida, made and executed a deed of conveyance to the orator McKinnon, of the following described lands lying in Jackson county, Florida, to-wit: Commencing at the southeast corner of the southwest quarter of the northwest quarter of Section 4, township 4, range 10 N. and W. run north to the Marianna and Campbellton road 24 chains and 16 links, then from said southeast corner of said southwest quarter of the northwest quarter run west 4 chains and 69 links, thence north 26 chains and 67 links to the Marianna and Campbellton road, the said Marriana and Campbellton road being the northern boundary line of said land except one acre

lying between the fair grounds and a place lately owned
by one Guff Bellamy or his wife, immediately in front of
the house and lot owned by Mrs. Lucy Maltsby and on the
south side of the Campbellton road, the same being the
land willed by the late Mrs. Amanda Barkley to the
Methodist Church of Marianna, Florida, and is a part of
the northwest quarter of Section 4, Township 4, Range
10, North and West; a copy of which deed is attached to
the bill as Exhibit "H"; that the land described in said
deed was owned by Mrs. Amanda Barkley who died in
1879, having made her last will and testiment devising
said strip of land to one Robert J. Pitman in trust for the
Methodist Episcopal Church of Marianna, Florida, a copy
of which will is attached to the original bill and made
a part of this cross bill; that Pitman died before he exe-
cuted the trust created by the will, and M. L. Dekle was
was duly appointed trustee in his stead by the Circuit
Court of Jackson County, and from him orator purchased
said land and received said deed; that orator went into
immediate possession of the land under said deed at the
date it bears, and has remained in open notorious and
continuous possession of the same ever since, having en-
closed, cleared and built houses on more than half of the
said land, the same being vacant, wild unimproved land at
the time of his purchase. The cross bill and answer then
enter into a long detailed statement of interviews with
the complainant and her husband in regard to this land,
and the disputes over it, and allege that complainant's
husband knew of his, McKinnon's claim to the land
and never mentioned his wife's claim until six or eight
years after his, McKinnon's, purchase of it, and entry into
possession, when he claimed that his wife had a tax deed
to it, but said tax deed did not describe the land in dis-
pute. Complainant's husband afterwards as assessor as-
sessed the land in dispute to McKinnon for two or three

terms and McKinnon thought that he had abandoned all claim to it. The cross bill as has been stated prayed for the cancellation of the deed from Guff Bellamy and wife to complainant in the original bill dated 5th of September, 1904, for injunction, etc. An answer was filed to the cross bill and replications were filed.

The pleadings cover over 40 pages of the record, but we have given so much of the substance thereof as seems material to a decision of the case. A large amount of testimony was taken before a master and upon a final hearing the Circuit Judge made a decree dismissing appellant's bill and granting the prayer of the cross bill of appellee cancelling the deed made by Susan Bellamy and her husband to complainant on the 5th of September, 1904, and enjoining appellant and her agents and servants against trespassing on the land in dispute. This decree is brought here for review by Mrs. Rachel Baltzell.

It has been stated that in 1858 W. C. Bryan conveyed the west half of the northwest quarter of Section 4, Range 10 North and West to Amanda Barkley. The Marianna and Campbellton road runs in a slightly northwestern direction through the northwest quarter of the northwest quarter (the northern 40) of this land. It apparently strikes it about one hundred yards above the southeastern corner of this quarter-quarter section, inclining as has been seen a little to the north in its progress through the same. The acre in dispute is near the southeastern corner and south of the said road which is the northern boundary. Opposite to this acre and across the road is the Baltzell house, which is an old home place known as the Rock Cottage, and by other names. The record does not show the extent of the Baltzell lot. The larger portion of this quarter-quarter section is north of the Marianna and Campbellton road. The record shows that Mrs. Amanda Barkley conveyed

to Martha Dickens in 1873 the following land: Commencing at the northwest corner of the west half of the northwest quarter of section four, Tp. 4, R. 10 N. and W., running east 70 yards, south 70 yards, thence 70 yards to the western boundary of said west 1-2 of N. W. 1-4 of S. W. 1-4 Tp. 4, R. 10, thence north along said line to the beginning." This was evidently intended to convey one acre in the northwest corner of Mrs. Barkley's land. The record also shows a conveyance by Mrs. Barkley to Lucy C. Maltsby of one acre north of the road leading from Campbellton road in 1859. So far as we can discover from this record which is in many respects unintelligible to us, no conveyances by Mrs. Barkley of any other portions of her land north of the Marianna and Campbellton road are shown. Some of the witnesses say she conveyed it all, but we can not rely on that kind of testimony as evidence of a transfer of real estate. The Russ House and lot are located on the quarter-quarter section east of Mrs. Barkley's north quarter-quarter section. The house is north of the Marianna and Campbellton road. and about one hundred feet from it. The deed from. Mrs. Barkley to Martha Jane Burket made in August,. 1871, on which complainant relies describes the following land, viz.: the following described land lying one mile west of the town of Marianna being at the northeast corner of the land so owned by her, and commencing at the road front of the house of Joseph W. Russ on the road leading from the town of Marianna to Campbellton,. running thence 70 yards south, thence seventy yards west, thence 70 yards north, from thence 70 yards east to the point of beginning.

We are absolutely unable from any definite information furnished by this record to identify the land thus described as being the acre in dispute. The Russ house is over 150 yards east of the said acre, and to take the

front of that house as the beginning point of survey will put the described acre a considerable distance to the east of the one in dispute. If we take "the northeast corner of the land so owned by her" as the point of beginning it will place the land described as well as we can discover one hundred and fifty or two hundred yards north or northwest of the disputed acre. It is admitted by the complainant that the other deeds (except the one from Susan Bellamy in 1904,) introduced by her by clerical error fails to describe the disputed acre.

The bill. alleges a deed from Martha Jane Burkett to Susan Bellamy, but this deed is lost, and was not recorded. No description of the land as given in that deed is furnished by the evidence. If it followed the description in Martha Jane Burkett deed, it would throw no light on this case. The deed therefore of Susan Bellamy in 1904 to the complainant, though it correctly describes the disputed acre is not founded upon a documentary title. The complainant therefore is not shown to have any documentary title to the acre in dispute.

We also think the evidence is not sufficient to sustain a title to her by adverse possession. The disputed acre has never been enclosed. The various claimants to it have now and then cut poles, posts and some fire wood from it, but we can discover no such permanent marks of occupancy by complainant and those under whom she claims as would be notice to one of an adverse claim, or comply with the statutory definition of adverse possession without color of title. (See §1722, Gen. Stats. 1906.) There has of course been no adverse possession under color of the deed of September 5th, 1904, for seven years before this suit was brought. (§1721 Gen. Stats. 1906.) At least that was evidently the view of the Circuit Judge, and the evidence does not warrant us in overruling him on that point. We therefore do not think the Circuit Judge

erred in dismissing complainant's bill. Nor can we affirmatively say that the judge erred in granting the prayer of the cross bill.

An examination of the will of Amanda Barkley shows that the trustee thereby appointed had ample authority to sell and convey the land in dispute. When the trustee thus appointed died, a successor to him was appointed by the Circuit Court, and this successor executed the deed to McKinnon in 1886 under which he claims the disputed acre. The surveyor who testified in the case says that the description of the land conveyed in the deed of Dekle, trustee, embraces the acre in dispute, and we cannot discover that he erred in that regard—in fact this is admitted by the solicitor for complainant. McKinnon has been in possession of the land conveyed to him for a long number of years, and has had quite a half of it under enclosure and in cultivation for a number of years. McKinnon and some of his witnesses testify that he has exercised acts of ownership and control over this disputed acre during these years.

The various deeds presented by the complainant, and especially the one from Susan Bellamy in 1904, have been made the basis of a protracted dispute over this acre of land, resulting in litigation, bad blood and broken family relations. It is a bad commentary upon the weakness of our human nature that insignificant property rights should become a *causus belli* sufficient to break up the peaceful relations of intelligent Christian people.

We discover no reversible error in the record and the decree appealed from is affirmed.

All concur, except PARKHILL, J., who took no part.